IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Kenneth Jerome Scott,            )<br>                                            )<br>              Plaintiff,           )<br>                                            )<br>    vs.                                   )<br>                                            )<br>Sargent FNU Riley, Sgt. Nunley, PFC )<br>Glessner, PFC Jett, Ofc. Dix, Captain )<br>McElvogue, Lieutenant Currie,   )<br>Detective Edmonds, John and Jane )<br>Doe, the Asst. Administrator of    )<br>Berkeley County,                       )<br>                                            )<br>              Defendants.       )<br>_____) | Civil Action No. 8:05-02139-TLW-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a former state pretrial detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the defendants' motion for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint in the Court of Common Pleas of Berkeley County on April 15, 2005. The action was removed to this court on July 28, 2005. In the complaint, the plaintiff alleges that the defendants violated his constitutional rights. On September 12, 2005, the defendants filed a motion for summary judgment. By order filed September 13, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On September 29, 2005, the plaintiff filed a motion to compel discovery and a motion to stay summary judgment. On

December 27, 2005, the plaintiff filed a response in opposition to the motion for summary judgment.

## **FACTS PRESENTED**

The plaintiff is currently incarcerated at the Ridgeland Correctional Institution. At the time of the incident which is the subject of his complaint, the plaintiff was being held as a pre-trial detainee at the Berkeley County Detention Center ("BCDC").  The plaintiff alleges that on January 30, 2004, he was subjected to excessive force and that the defendants were deliberately indifferent to his medical needs.  Specifically, the plaintiff alleges that he was handcuffed to a steel bench by Officer Glessner because he refused to go back into his cell.  The plaintiff alleges that the toilet in his cell had overflowed, resulting the presence of urine and feces on the floor of the cell (comp. at 4).  He further alleges that his cell mate "became enraged" and tried to exit the cell as well, and that he (plaintiff) told the officers that he would not return to the cell with his cell mate there and that he could not put up with his cell mate kicking and banging all the time.  Ultimately a plumber was called and the toilet was fixed and the cell was cleaned (comp. at 5 - 6).

After the cell was cleaned, the plaintiff alleges that he made it clear to Officer Edmonds that he would not return to his cell.  The plaintiff was still handcuffed to the bench. Despite several requests from the officers, the plaintiff refused to re-enter his cell, because, he alleges, his cell mate was threatening him.  At that time, five officers (defendants Riley, Nunley, Glessner, Jett and Dix) entered the area and attempted to move the plaintiff. Officer Riley then sprayed the plaintiff with pepper spray (comp. at 8).  The plaintiff alleges that after he was sprayed with the pepper spray, the officers continued to punch him "because I would not let them take me down." (comp. at 11).  According to the plaintiff, he was eventually handcuffed to the bench and "no one assaulted [him] further physically."

Officer Glessner was injured during the incident and EMS was called (comp. at 12).  The plaintiff alleges that he asked the EMS personnel to examine him but the officers would not allow him to be treated.  The plaintiff was then placed in another cell.  He alleges that the water in the cell was turned off so that he could not wash off the pepper

spray. He further alleges that he was kept in the cell for ten days with no supplies and no medical care (comp. at 12-13).

The plaintiff alleges that his knee was injured during the incident and that he did not receive medical care until after he was transferred two months later to the Charleston County Detention Center. He alleges that he was told that because of the delay in treatment, "the damage done to [his] knee had already begun to improperly heal" and that "possibly within the next five years ,,, [he] may have to undergo surgery to correct the problem." (comp. at 14). He also alleges that because of the injury to his knee, there are still times when he is "left barely able to walk." (comp. at 15).

The plaintiff seeks actual damages in the amount of $175,000, together with punitive damages.

The defendants submitted affidavits and prison records with their motion for summary judgment. The individual defendants all describe the plaintiff as "frequently combative, hostile and abusive to the staff as well as to other inmates both before and after the events of January 30, 2004." (*e.g.*, Glessner aff. ¶ 3). The following description of the events of January 30 is representative of all the defendants' affidavits:

> 4.  On January 30, 2004, it became necessary for force to be used against inmate Scott because he was being combative, was resisting orders, and was endangering the officers of the Detention Center and himself. Even after the use of force, Mr. Scott continued to resist and continued to be combative. I observed Mr. Scott continue to be combative and continue to resist orders during the entirety of these events.
>
> 5.  It is my opinion that the amount of force used by all of the prison officials against inmate Scott was only that amount of force needed to attempt to get Mr. Scott to comply with commands to enter his cell, to ensure officer safety and to attempt to get him to stop resisting. Verbal orders were given to inmate Scott prior to the use of force. Inmate Scott did not obey the verbal orders given to him. Force became necessary only after lesser means were first attempted to get him to comply with the orders he was being given. At no time did the amount of force used against Mr. Scott exceed the amount of

3

> force needed to attempt to have him cease his resistance, stop his violent behavior and obey commands. Specifically, I warned inmate Scott if he continued to resist, I would be forced to capstun him. I attempted to use lesser means prior to using pepper spray. If inmate Scott would have obeyed the orders and would have stopped resisting, I would not have used pepper spray. I did not use pepper spray with the sole purpose of inflicting pain. I used the pepper spray to attempt to deal with a recalcitrant inmate. The amount of pepper spray used was a small amount and inmate Scott did not stop resisting. He was still combative even after it was used. The pepper spray was used with the intention of avoiding hand to hand combat with inmate Scott and in an attempt to ensure officer safety,
>
> 6.     It eventually became necessary for us to arrange to have inmate Scott moved to the Charleston County Detention Center because his level of combativeness and resistance on a regular basis was greater that the amount of resources available to us.
>
> 7.     Inmate Scott was known to me as being an inmate who had a history of resistance, was known to fight other inmates, and had the ability to inflict serious harm upon me and/or the other officers. On January 30, 2004, I believed that without the use of force being used against inmate Scott, he would have attempted to inflict serious bodily harm on me or the other officers. Without the use of force, inmate Scott posed a significant threat of harm to me and the other officers.

(Riley aff. ¶¶ 4 - 7). During the incident on January 30, 2004, defendant Glessner was injured and apparently was treated by medical personnel. Defendant Riley also states in his affidavit that he does not recall the plaintiff requesting medical assistance as a result of the events on January 30, 2004, nor does he recall the plaintiff ever complaining of being injured (Riley aff. ¶ 9; *see also* Dix aff. ¶ 8; Jett aff. ¶ 8). Additionally, defendant Currie, a captain and the Director of the BCDC, stated in his affidavit that he had reviewed the plaintiff's inmate file and "there is no documentation that he requested any medical assistance or complained by way of grievance form that he suffered any injury as a result of the events alleged within the complaint." (Currie aff. ¶ 10). Moreover, a report from a medical examination the plaintiff received on March 25, 2004 indicates that the plaintiff

4

stated he did not want to see a doctor and that he was rude and uncooperative during the examination.

The prison records submitted by the defendants reveal that there were numerous disciplinary reports filed with regard to the plaintiff, both before and after the January 30, 2004 incident. Most of the incidents involved fighting and disruptive behavior. Finally, documents in the record show that the plaintiff was charged with Assault on a Correctional Officer following the incident on January 30, 2004, where defendant Glessner was injured. The plaintiff was convicted of the charge in General Sessions court on June 29, 2004 and was sentenced to an additional four years in prison.

## **APPLICABLE LAW**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" id the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

5

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Exhaustion of Administrative Remedies*

Initially, the court notes that the plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C. §1997e(a). The revised PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Recently, in *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. The Berkeley County Detention Center has a grievance procedure that allows inmates to file written requests. All grievances submitted by an inmate are kept in that inmate's filed. According to the affidavit of Captain Currie, there were no grievances filed by the plaintiff regarding the events alleged in his complaint nor were any grievances filed on his behalf. (Currie aff. ¶ 11). Accordingly, the plaintiff has failed to establish that he has exhausted his administrative remedies pursuant to §1997e(a).

In any event, the court will address the merits.

### *Excessive Force Claim*

The plaintiff alleges that the defendants used excessive force against him. In *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), the Fourth Circuit Court of Appeals concluded that the excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. Additionally, the proper analysis under the Fourteenth Amendment is "whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998).

The affidavits submitted in support of summary judgment show that the plaintiff refused to follow directives and that he physically assaulted defendant Glessner. The defendants tried different levels of restraint, beginning with handcuffing the plaintiff, with little success. The plaintiff continued his resistance to being moved back into his cell. The application of the pepper spray was an appropriate and minimal response to the threat posed by the plaintiff to the officers involved. All of defendants testified that the plaintiff was known to be an unruly and disruptive inmate. Their belief that the plaintiff posed a threat to them and other inmates was reasonable under the circumstances.

In *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) the court held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an

Eighth Amendment excessive force claim if his injury is *de minimis*." Further, "extraordinary circumstances are present when 'the force used [is] of a sort repugnant to the conscience of mankind … or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Taylor*, 155 F.3d at 483-84 (citing *Norman*, 25 F.3d at 1263 n. 4). Importantly, in *Riley*, the court extended the holding of *Norman* to excessive force claims brought by pretrial detainees. *Riley*, 115 F.3d at 1166.

Likewise, in the present case, there is no evidence, other than the plaintiff's conclusory statements, that he suffered any injury. The lack of any serious injury compels the conclusion as a matter of law that the plaintiff suffered no constitutional deprivation when he was restrained by the defendants. *See Taylor,* 155 F.3d at 484 ("temporary swelling and irritation is precisely the type of injury this Court considers *de minimis*."); *Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir. 1998) ("bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted *de minimis* injury).

Based upon the foregoing, this court finds that the plaintiff has failed to show an issue of material fact with regard to "whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Accordingly, summary judgment should be granted.

***Medical Indifference Claim***

The plaintiff also alleges that he was denied medical attention and treatment for his injuries resulting from the incident on January 30, 2004.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id*. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs"

that the Eighth Amendment is offended. *Id.* at 104. "Deliberate indifference is a very high standard - a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

The plaintiff alleges that he suffered serious injury to his knee and that the defendants were deliberately indifferent to his medical needs. There is no evidence in the record that the plaintiff suffered any serious injury. A claim of deliberate indifference to serious medical needs requires a greater showing than made here, even if it were to be assumed that the plaintiff's medical needs were serious and that a finding of negligence on the part of one or more of the defendants could be supported by the evidence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Estelle*, 429 U.S. at 106. The plaintiff has not shown that he had any serious medical need to which the defendants responded with deliberate indifference. The plaintiff's claim of a serious and lasting injury fails in light of the fact that two months later, when seen by a prison doctor, the plaintiff indicated that he did not need to be seen. There are, quite simply, no records which show a serious injury to the plaintiff's knee. As such, the plaintiff's claims that he might need surgery five years from now are speculative at best and are merely bald allegations which are insufficient to survive summary judgment. *See White v. Boyle*, 538 F.2d 1077 (4th Cir. 1976)(conclusory allegations insufficient to survive summary judgment).

### *Conditions of Confinement Claim*

The plaintiff has arguably alleged a claim based on the conditions of his confinement. He alleges that he did not have running water or other supplies in his cell for several days. He also appears to claim that he was exposed to a risk of harm by being placed with a cell mate who threatened him.

Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*,

979 F.2d 987 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id*. at 991, *citing Bell v. Wolfish*, 441 U.S. at 535. For the punishment, *i.e.*, the alleged unconstitutional condition of confinement, to be sufficiently serious, it must fail to meet the minimal civilized measure of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 341 (1981). Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it is excessive in relation to that purpose. *Bell*, 441 U.S. at 538-540; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Prison officials are afforded deference in determining what is reasonably related to a legitimate government objective. Indeed, plaintiffs bear the burden of producing, even at the summary judgment stage, "specific non-conclusory factual allegations" of an improper motive. *Crawford-El v. Britton*, 523 U.S. 574 (1998).

The affidavits of the defendants indicate that the plaintiff's cell had running water, and that the defendants were unaware of any problem between the plaintiff and his cell mate which would have exposed the plaintiff to a risk of injury. Moreover, the plaintiff does not allege that he was injured by his cell mate. It appears that his own behavior resulted in the incident of which he complains. "Not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill*, 979 F.2d at 991. Accordingly, the plaintiff has failed to state a claim for a constitutional violation.

*Qualified Immunity*

The defendants further argue that they are entitled to qualified immunity. As there is no evidence that the defendants violated any constitutional rights of the plaintiff, it is unnecessary to address this issue. *See Young v. City of Mount Rainier*, 238 F.2d 567, 577-578 (4th Cir. 2001)(where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted. It is further recommended that the remaining motions be held in abeyance pending the district court's decision on the dispositive motion. Should the district court adopt this recommendation, the remaining motions will be moot.

                                                s/ Bruce H. Hendricks
                                                United States Magistrate Judge

April 26, 2006
Greenville, South Carolina